UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLEN RUSHEFSKY, on behalf of himself and all Others similarly situated,

Plaintiff,

v.

NEXT MARVEL, INC,, doing business as ZELOOL

Defendant,

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, GLEN RUSHEFSKY ("Plaintiff" or "Mr. Rushefsky"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH NORINSBERG, LLC, brings this action against NEXTMARVEL INC.**,** d/b/a Zeelool.com ("Zeelool”" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.zeelool.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff GLEN RUSHEFSKY is a legally blind resident of Bronx County, New York, registered with the New York State Commission for the Blind under Registration No. 284906. According to a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. Dr. Mendel documents that Mr. Rushefsky suffers from profound central scotomas,

severely reduced visual acuity, and markedly diminished contrast sensitivity, meeting both federal and New York State criteria for legal blindness. Due to the severity and permanence of his condition, Dr. Mendel recommends that Mr. Rushefsky receive 24-hour supportive care to ensure his safety and ability to perform activities of daily living. *See* Exhibit A (Rushefsky Medical Letter & Blind Card)

2. Because of his permanent and irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NonVisual Desktop Access ("NVDA"), to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, NVDA can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, NVDA cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant NEXTMARVEL INC., doing business as “Zeelool,” owns, operates, and controls the commercial retail website www.zeelool.com (“Website”), which markets and sells prescription eyeglasses, sunglasses, and related eyewear products to consumers nationwide, including New York. The Website functions as an online retail store and the primary digital gateway to Defendant’s eyewear business. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

4. In late 2025, Plaintiff sought to purchase polarized sunglasses for himself. Although prescription lenses cannot restore his vision, sunglasses serve an important functional and personal purpose for blind individuals: they reduce glare, protect sensitive eyes, and help conceal the visible signs of blindness in public settings. For Plaintiff, sunglasses are a tool of privacy, dignity, and social comfort**,** allowing him to navigate

public spaces without drawing unwanted attention to his disability.

5. Plaintiff also attempted to purchase a pair of prescription eyeglasses for his home health aide, who had broken her only pair several months earlier and could not afford a replacement. Plaintiff had recently received a modest inheritance from a deceased aunt and wished to use a portion of those funds to help the aide who supports him daily. Zeelool prominently advertises low-cost prescription eyewear, and Plaintiff reasonably believed he could purchase an affordable replacement pair for her through the Website.

6. Motivated by these needs, Plaintiff visited www.zeelool.com on multiple occasions in December 2025 and February 2026 to browse and purchase both polarized sunglasses for himself and prescription eyeglasses for his aide. During each visit, Plaintiff encountered widespread accessibility barriers that prevented him from identifying products, selecting options, adding items to his cart, or completing a purchase.

7. These barriers were not isolated or subjective; they are confirmed by the SortSite Accessibility Validation Report and the SortSite Broken Link Report, which document systemic WCAG 2.1 violations across thousands of pages of the Website. Exhibit B. The SortSite reports identify, among other things:

- 26 Level A failures across 3,710 pages
- 59 pages using placeholder or meaningless alt text such as “good0,” “excelente0,” “10/10 recommend0,” and “star”
- 1,753 pages where ARIA roles hide focusable child elements, causing NVDA to navigate to controls that are not voiced
- 1,731 pages with empty headings, disrupting heading-level navigation
- 3,690 pages with missing iframe titles, causing screen readers to announce meaningless filenames

• Hundreds of product pages with missing or invalid alt text

• Pages with autoplaying videos and 25-second animations that cannot be paused

• Invalid list structures, missing aria-controls, and missing form labels

• Hundreds of broken links, including repeated 400-error links to Facebook and broken product/category URLs

• Images returning incorrect MIME types, preventing proper rendering and screen-reader interpretation

These barriers directly prevented Plaintiff from purchasing the polarized sunglasses he needed for privacy and glare reduction, and the prescription eyeglasses he intended to buy for his aide.

8. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Plaintiff — and all similarly situated individuals — full and equal enjoyment of Defendant's goods, services, and digital content, in violation of federal, state, and city civil rights laws.

9. Plaintiff's intent to return to www.zeelool.com is concrete, credible, and ongoing. He continues to need polarized sunglasses for daily use and remains committed to purchasing prescription eyeglasses for his aide once the Website is accessible. Plaintiff relies on online shopping due to his disability and will return immediately once the Website is remediated and compliant with WCAG 2.1 Level AA.

10. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is — and remains — fully accessible to blind and visually impaired consumers in substantial conformance with WCAG 2.1 Level AA.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the

Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 Executive Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") § 296 *et seq.*, and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in Bronx County, accessed and attempted to use the Website from his home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

12. Defendant NEXTMARVEL INC.**,** doing business as Zeelool**,** is a Texas corporation with its principal place of business located in Austin, Texas. Defendant conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling prescription eyeglasses, sunglasses, and related eyewear products to New York consumers through its highly interactive retail Website, www.zeelool.com. Defendant purposefully avails itself of the privilege of conducting

business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com,*

*Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. __ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. __ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

13. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## THE PARTIES

14. Plaintiff GLEN RUSHEFSKY is a legally blind resident of Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of his irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate

digital interfaces, read product information, and complete online transactions independently.

15. Defendant NEXTMARVEL INC., doing business as "Zeelool," is a Texas corporation with its principal place of business located in Austin, Texas. Defendant owns, operates, controls, and maintains the commercial retail website www.zeelool.com, which markets and sells prescription eyeglasses, sunglasses, and related eyewear products to consumers nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise.

16. Defendant markets, advertises, and sells its products directly to New York consumers through its Website, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products, review descriptions, select configurations, access promotions, and complete purchases. The Website includes detailed product pages for both prescription eyewear and sunglasses, including polarized sunglasses—one of the product categories Plaintiff attempted to purchase for himself—and low-cost prescription eyeglasses, which Plaintiff attempted to purchase for his home health aide. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

17. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and

systematic business activity within this District.

## NATURE OF ACTION

18. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG 2.1") constitutes unlawful discrimination and violates federal accessibility standards.

19. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

20. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools

are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22. Plaintiff Glen Rushefsky is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. § 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

23. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." [1]

24. The World Wide Web Consortium ("W3C") has published the Web

---

[1] See also American **Foundation** for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), noting that approximately 26 million American adults report significant vision impairment. *Id.* at 375.

Content Accessibility Guidelines ("WCAG 2.0" and "WCAG 2.1"), which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

25. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

- Missing text equivalents for non-text elements
- Unlabeled frames and navigation regions
- Scripts without accessible alternatives
- Inaccessible forms and input fields
- Content conveyed solely through visual presentation
- Inability to resize text without loss of functionality
- Time limits that cannot be adjusted or disabled
- Missing or ambiguous page titles
- Links lacking descriptive context
- Keyboard focus indicators that are not discernible
- Undetectable default language settings
- Components that trigger unexpected context changes
- Settings that alter context without user notice
- Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts
- Improperly nested markup, duplicate attributes, and non-unique IDs
- Inaccessible Portable Document Format (PDF) files
- User interface elements whose roles and states cannot be programmatically determined (items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology)

## STATEMENT OF FACTS

26. Plaintiff GLEN RUSHEFSKY is a legally blind consumer residing in

Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of this permanent impairment, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions independently.

27. LHON is irreversible and progressive. Mr. Rushefsky's remaining functional vision is insufficient to read standard print, recognize images, or visually interpret digital interfaces. He cannot safely or effectively rely on visual cues to identify products, perceive contrast, or operate interactive controls. As a result, he depends entirely on properly coded, screen-reader compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

28. In late 2025, Plaintiff sought to purchase **polarized sunglasses** for himself. Although prescription lenses cannot restore his vision, sunglasses serve an important functional and personal purpose for blind individuals: they reduce glare, protect sensitive eyes, and help conceal the visible signs of blindness in public settings. For Plaintiff, sunglasses are a tool of **privacy, dignity, and social comfort**, allowing him to

navigate public spaces without drawing unwanted attention to his disability.

29. Plaintiff also attempted to purchase prescription eyeglasses for his home health aide, who had broken her only pair several months earlier and could not afford a replacement. Plaintiff had recently received a modest inheritance from a deceased aunt and wished to use a portion of those funds to help the aide who supports him daily. Zeelool prominently advertises low-cost prescription eyewear, and Plaintiff reasonably believed he could purchase an affordable replacement pair for her through the Website.

30. Motivated by these needs, Plaintiff visited www.zeelool.com on December 12, 2025, January 8, 2026, and February 17, 2026, using NVDA with the intent to browse polarized sunglasses, review product details, and purchase both sunglasses for himself and prescription eyeglasses for his aide. During these visits, he attempted to access and purchase at least the following categories of products:

Polarized sunglasses marketed for glare reduction and outdoor use;

Prescription eyeglasses advertised as low-cost, customizable, and available with expedited shipping;

Sale-priced frames promoted on the Website's homepage and category pages.

These items were selected because they matched his functional needs and his aide's urgent need for replacement eyewear.

31. Despite his clear intent to shop for these specific products, Plaintiff was unable to meaningfully navigate or interact with the product pages due to pervasive accessibility barriers on those exact pages. Using NVDA, he encountered:

Product images for sunglasses and prescription frames that lacked descriptive alternative text, causing NVDA to announce only "graphic," "image," or nothing at all, preventing him from confirming the style, tint, or frame design.

Unlabeled or improperly labeled "Add to Cart" buttons, which NVDA announced generically as "button," providing no indication of the control's purpose.

Size, color, and lens-type selectors implemented as unlabeled clickable elements, announced only as "link" or "button," preventing him from choosing a preferred option.

Price and sale information conveyed only visually, including crossed-out original prices and low-contrast promotional text, which NVDA either skipped or announced incompletely.

Empty links and empty headings within product detail sections, causing NVDA to move through meaningless "link" or "heading" announcements that provided no context.

Focusable elements hidden from the accessibility tree due to invalid ARIA roles, causing NVDA to land on silent or non-voiced controls.

32. These barriers prevented him from identifying products, selecting options, confirming pricing, or adding items to his cart. The SortSite Accessibility Validation Report identifies:

☐ **26 Level A failures** across 3,710 pages;

☐ **1,753 pages** where ARIA roles hide focusable child elements;

☐ **1,731 pages** with empty headings;

☐ **3,690 pages** with missing iframe titles;

☐ **Hundreds of product pages** with missing or invalid alt text;

☐ **Pages with autoplaying videos and 25-second animations** that cannot be paused;
Invalid list structures, missing aria-controls, and missing form labels.

These findings confirm that the barriers Plaintiff encountered are systemic, widespread, and directly tied to Defendant's failure to implement basic accessibility practices.

33. As a direct result of these specific barriers, Plaintiff was unable to complete the transactions he set out to make. He could not:

Reliably identify the sunglasses or frames he was selecting;

Confirm the tint, frame style, or lens options;

Verify the sale price or total cost;

Activate a clearly labeled "Add to Cart" button to place items in his cart and proceed to checkout.

His exclusion was real, immediate, and directly caused by Defendant's failure to implement industry-standard accessibility practices on the very pages offering the products he sought to purchase.

34. Defendant's Website is not a passive marketing tool; it is a fully interactive retail platform central to Defendant's business model. Through www.zeelool.com, Defendant markets, advertises, and sells prescription eyewear, sunglasses, and related accessories nationwide, including to New York residents. The Website offers product listings, detailed descriptions, color and lens selectors, promotional pricing, and checkout functionality. Defendant relies on this Website as a primary channel for distributing its merchandise.

35. On information and belief, Defendant has operated www.zeelool.com for years without implementing WCAG-compliant accessibility protocols. Despite longstanding federal guidance and the widespread availability of automated testing tools such as SortSite, Defendant has failed to remediate the barriers identified above. The same types of issues—missing alternative text, unlabeled buttons, empty links, invalid ARIA roles, and low-contrast text—appear across thousands of pages, reflecting a

systemic disregard for blind and visually impaired users rather than an isolated coding error

36. Plaintiff's intent to return to www.zeelool.com is concrete, credible, and ongoing. His interest is not abstract or generalized; it is tied to:

His prior visits on December 12, 2025, January 8, 2026, and February 17, 2026;

His specific attempts to purchase polarized sunglasses and prescription eyeglasses;

His ongoing need for sunglasses to reduce glare and conceal the visible signs of blindness;

His desire to purchase replacement prescription glasses for his home health aide;

His reliance on accessible online shopping as a blind consumer who cannot safely browse physical eyewear stores.

37. Plaintiff continues to seek polarized sunglasses because they offer the combination of glare reduction, privacy, and comfort that he requires to navigate public spaces safely and with dignity. He also remains committed to purchasing prescription eyeglasses for his aide, who still lacks a functional pair. Because he cannot visually inspect eyewear in stores, he depends entirely on accessible online product pages to evaluate frame style, lens options, materials, and pricing. Zeelool's Website offers a broader and more current selection of its own products than third-party retailers, making it the only meaningful channel through which Plaintiff can access the full range of Zeelool eyewear.

38. Plaintiff's prior attempts to shop on the Website were genuine and purposeful. He did not visit www.zeelool.com as he urgently needed polarized sunglasses and wished to purchase prescription eyeglasses for his aide. He attempted to read product descriptions, review features, confirm pricing, select options, and add items

to his cart, but was prevented from doing so by the Website's accessibility barriers.

39. Plaintiff's intent to return is not speculative. He intends to revisit www.zeelool.com and complete his purchases once the Website is accessible because:

He still needs polarized sunglasses for daily use;

He remains committed to purchasing prescription eyeglasses for his aide;

He cannot obtain equivalent information or selection from physical stores due to his blindness;

Defendant's Website is the primary and most complete source for Zeelool's merchandise, including sale items and customizable lens options.

40. Plaintiff's need for accessible online shopping is permanent and ongoing. His LHON-related vision loss prevents him from browsing physical retail stores, reading in-store signage, or visually inspecting eyewear. As a result, he relies exclusively on accessible e-commerce platforms to evaluate and purchase sunglasses and prescription glasses. Defendant's failure to make www.zeelool.com accessible denies him full and equal enjoyment of its goods and services and forces him to either forgo desired products or seek inferior or less suitable alternatives elsewhere.

41. Plaintiff will return to www.zeelool.com once the Website is remediated to substantial conformance with WCAG 2.1 Level AA because he remains interested in purchasing polarized sunglasses for himself and prescription eyeglasses for his aide. His ongoing interest in these specific products, combined with his prior attempts to purchase them and his reliance on accessible online shopping, establishes a real and immediate threat of repeated injury absent injunctive relief.

## CLASS ACTION ALLEGATIONS

42. Plaintiff GLEN RUSHEFSKY brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

> All legally blind individuals in the United States who have attempted to access **www.zeelool.com** and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.

43. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

> All legally blind individuals residing in the State of New York who have attempted to access **www.zeelool.com** and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

44. Common questions of law and fact exist among the Class, including:

- Whether www.zeelool.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace

45. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

46. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation.

Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

47. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

48. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

49. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

50. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

52. Defendant's Website that is offered as a link to the company is a service

that is offered to the general public, and as such, must be equally accessible to all potential consumers.

53. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

54. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

- A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and
- A failure to take such steps may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

55. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.zeelool.com has not

been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

56. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section "Prayer For Relief" below.

**<u>SECOND CAUSE OF ACTION</u>**

**Violation of New York State Human Rights Law ("NYSHRL")**

57. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 *et seq.*, covers the actions of the Defendants.

59. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

60. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.zeelool.com within the meaning of

Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

61. Plaintiff has visited the Website, www.zeelool.com on a number of occasions and has encountered barriers to his access that exist.

62. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

63. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

64. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of

N.Y. Exec. Law § 296(2)(c).

65. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

66. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

67. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

68. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

69. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**

**(Violation of New York State Civil Rights Law ("NYCRL"))**

70. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

72. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

73. "No person, because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision." N.Y. Civ. Rights Law ("NYCRL") § 40-c.

74. § 292 of Article 15 of the N.Y. Executive Law deems a disability, "a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function." As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

75. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.zeelool.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to

all persons and discriminates against disabled individuals who are sight impaired.

76. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

77. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

78. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

79. Plaintiff and the Sub-Class hereby demand co mpensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law ("NYCHRL"))**

80. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment,

on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

82. Defendant is subject to NYCHRL because it owns and operates the Website, www.zeelool.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

83. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

84. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of § 8-107 *et seq.* from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

85. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

(a) constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

86. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

87. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

88. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

89. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

90. Plaintiff is also entitled to reasonable attorneys' fees and costs.

91. Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

92. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website

contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

94. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

2. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

3. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

4. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys

as Class Counsel;

5. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

6. Pre-judgment and post-judgment interest;

7. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

8. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
April 9, 2026

JOSEPH & NORINSBERG
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No. (212) 227-5700
Fax No. (212) 656-1889
rschonfeld@employeejustice.com